IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

MASON DILLON, individually,

      Plaintiff,

vs.                           Civil Action No. : 3:21-cv-00435

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT A. LOWTHER, individually,
KENNY DAVIS, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West
Virginia, JOHN DOE, an individual,

      Defendants.

## COMPLAINT

      This complaint, brought pursuant to 42 U.S.C. Section 1983, and the Fourth Amendment to the United States Constitution, arises out of the unlawful and unreasonable search and seizure and excessive force which occurred at a residence located in Putnam County, on or about early-August of, 2019 in Putnam County, West Virginia, within the Southern District of West Virginia, Huntington Division.

## JURISDICTION

      This Court has jurisdiction over this matter pursuant to 28 U.S.C. 1331 and 1343.

## PARTIES

      1.     Plaintiff Mason Dillon was at all times relevant hereto a Lincoln County, West Virginia.

      2.     Defendant Brian D. Hall is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8,

Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

3. Defendant Xerxes Rahmati is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

4. Defendant Scott A. Lowther is and was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and is employed by the Putnam County Sheriff's Department. He is named in his individual capacity.

5. Defendant Kenny Davis was at all times relevant hereto a resident of Putnam County, West Virginia, with an address of 236 Courthouse Drive, Suite 8, Winfield, West Virginia 25213 and was employed by the Putnam County Sheriff's Department. He is named in his individual capacity. His current address is presently unknown.

6. Defendant Putnam County Commission ("PCC") is a political subdivision of the State of West Virginia. *See* West Virginia Governmental Tort Claims and Insurance Reform Act, W. Va. Code § 29-12A-1, *et seq*.

7. Defendant John Doe is named herein in his official capacity. His identity is currently unknown. He is the supervisor of the defendant police officers. He is a sworn law enforcement officer for the Putnam County Sheriff's Department. He is named in his individual capacity.

## **FACTS**

8. On January 15, 2020, a video was uploaded to YouTube showing several police officers, most of whom were not wearing uniforms, unlawfully entering the Putnam County, West Virginia residence of Dustin Elswick. The officers cut the wires to an outside surveillance camera prior to illegally entering the residence and searching it. However, unbeknownst to them, hidden cameras inside the residence filmed their actions.

9. Acting without a search warrant, and in violation of the Fourth Amendment of the U.S. Constitution, the officers illegally entered the home by removing an air conditioner from a window and climbing through the window into the home. The plain-clothed officers then illegally searched the home, presumably looking for drugs.

10. Though they did not find drugs or any other illegal item inside Mr. Elswick's home, the officers removed his firearms from their storage cases in the closet and took photographs of them. The officers also found the cremated ashes of Mr. Elswick's friend, and believing them to be drugs, submitted them to a field drug test kit. After testing negative, the kit with bits of human bone therein, were thrown on the floor of the residence by the defendant officers.

11. The officers left the Elswick residence ransacked, with Mr. Elswick's firearms still laying out in the open where they had been photographed. They found no illegal drugs in the Elswick's home. Upon information and belief, had the defendant officers found illegal drugs in Mr. Elswick's home, they would have taken the firearms, and other items, out of the home and seized them.

12. The officers in the Elswick search video were all members of the Putnam County Sheriff's Office's Special Enforcement Unit ("SEU"). All of the defendant police officers herein, with the exception of Defendant Kenny Mann, appear in the Elswick video, and were at all times relevant hereto members of the SEU.

13. Following the Elswick video going viral on social media and being featured on the television news, other victims of the SEU began to come forward, including the Plaintiff herein, as well as the Johnson family, who are plaintiffs in the now-pending case against the defendants, in civil action no. 3:21-cv-00242.

14. Upon information and belief, the SEU would obtain tips about individuals who may be in possession of marijuana, or who may be selling marijuana. They would then make warrantless entry into the residence of the suspected individual in possession of marijuana, or other suspected illegal drugs. Upon finding the marijuana that was the subject of the tip, the SEU would then threaten and pressure the suspect to give them another tip, or to identify another individual who was in possession of marijuana, in exchange for not being arrested or charged. The SEU members would then leave, taking the marijuana they seized, along with any cash money or firearms they located in their illegal search and seizure. The SEU would then repeat the process at the new target residence. They would leave no paper trail, such as police reports, warrant applications, charging documents, search and seizure inventory, etc. The seized marijuana, cash money, and even firearms seized, would thereafter disappear into the possession of the SEU members without ever being properly documented.

15. Prior to entering the Dustin Elswick home on August 21, 2019, the SEU visited the home of Plaintiff's friend, C.R.," in Putnam County, West Virginia at a time when Plaintiff was present.

16. On or about early August, 2019, the Plaintiff traveled to his friend, C.R.'s home in order to meet up with him to go fishing. The friend's home was located in Putnam County, West Virginia. Plaintiff did not reside at the home, but was an occupant of the residence as an invited visitor.

17. While Plaintiff was waiting for his friend, C.R., to finish getting ready, Plaintiff began to play a video game on a television and gaming console inside his friend's home.

18. While Plaintiff was playing the video game inside the house, C.R. was in the kitchen preparing food to bring on the fishing trip.

19. Suddenly the defendant police officers, acting as the SEU, began to knock on the exterior door of the home. The officers demanded to come in. Plaintiff's friend answered the door and declined to allow the officers to enter his home without a warrant. Plaintiff was inside the home and observing.

20. The officers forcibly entered the home anyways, without a warrant and without consent to enter.

21. Plaintiff was surprised at the officers' actions, which placed him in fear. He immediately put both hands up, to where his hands were visible to the officers.

22. Plaintiff began to ask questions about what was going on. His hands were kept in the air, where the officers could see that he did not pose a threat to anyone's safety.

23. Defendant Kenny Davis then drew a firearm and pointed it at the Plaintiff.

24. In apparent response to the questions asked by the Plaintiff, defendants Davis, Hall and Rahmati then grabbed the Plaintiff and forcibly and violently jerked and threw him out the front door and slammed him into a wall outside C.R.'s home, causing Plaintiff's face to impact the wall. They immediately handcuffed the Plaintiff, with Defendant Davis using an unnecessary amount of physical force in twisting Plaintiff's arm, for the sole reason of causing Plaintiff pain. Plaintiff was not resisting and was compliant with all orders directed at him.

25. Plaintiff was then handcuffed by the defendant officers and placed outside the home for an extended period of time.

26. Meanwhile, the defendant officers began to search the home.

27. The defendant officers found a small amount marijuana belong to C.R. inside the home and confiscated the same. They also confiscated all cash found in the residence, which amounted to a couple of hundred dollars.

28. During the incident, which lasted approximately an hour and a half, the Plaintiff was kept handcuffed outside the residence.

29. Plaintiff was eventually released without being arrested. Prior to leaving, however, the defendant officers each circulated Plaintiff's ID and each photographed the ID on their cell phones, threatening Plaintiff that they could cause him harm in the future, should they choose to do so.

30. The defendant officers eventually left the residence without providing any paperwork to either the Plaintiff or his friend. There was no warrant provided. Nor was there an inventory of seized property provided, nor any other documentation.

31. Thereafter, the Plaintiff was not charged with any criminal violation. Upon information and belief, nor was Plaintiff's friend charged with any criminal violation.

32. Thereafter, Plaintiff served a Freedom of Information Act (FOIA) request on the Putnam County Sheriff's Department, requesting documentation that the event had transpired. However, the FOIA response indicated that no such documentation existed. There was no record of any sheriff's deputies ever having come into contact with the Plaintiff, according to their records.

**COUNT ONE - UNREASONABLE SEARCH AND SEIZURE
IN VIOLATION OF THE FOURTH AMENDMENT**

33. Plaintiff incorporates by reference all of the previous paragraphs.

34. On or early August, 2019, the defendant police officers forcibly entered the residence of Plaintiff's friend, C.R., which was then occupied by the Plaintiff, who had been playing a video game inside the home at the time the officers knocked on the door.

35. The Plaintiff's friend declined to consent to the defendant officers' entry into the home, instead demanding to see a warrant. Nevertheless, the defendant officers forcibly entered the residence without the consent of any occupant or resident of the home.

36. Upon information and belief, the defendant officers did not have a search warrant authorizing them to enter and search the Plaintiff's friend's home. A subsequent FOIA request to the Putnam County Sheriff's Department confirmed that there is no record of a warrant.

37. The officers did not have exigent circumstances to justify entering and searching the Plaintiff's friend's home - nor did exigent circumstances objectively exist.

38. No objectively reasonable police officer would believe that they possessed the legal justification or authority to enter and/or search the Plaintiff's friend's home as described above, without a warrant, without consent, and without exigent circumstances justifying entry, for the purposes of searching the home for contraband.

39. During the search, Plaintiff remained seized for a period of approximately an hour and a half, remaining in handcuffs the entire time, while the officers performed a warrantless search and seizure in the home of the Plaintiff's friend.

40. The seizure of the Plaintiff as described herein was unreasonable by virtue of the fact that the search being conduct was without legal justification under the Fourth Amendment.

41. The seizure of the Plaintiff as described herein was additionally unreasonable by virtue of the fact that the treatment of the Plaintiff during the search was unreasonable, in that Plaintiff was kept handcuffed for a prolonged and unnecessary period of time, inflicted with violating and unnecessary physical force and otherwise mistreated by the defendant officers, including being threatened and having his ID photographed.

42. The defendant officers possessed no legal justification for the forcible entry, search and seizure, as described above. They did not possess a search warrant. They did not possess voluntary consent. Nor did exigent circumstances exist to justify their entry into the home and the ensuing search and seizure.

43. Rather, the defendant officers, acting as the SEU, were engaging in a pattern and practice of performing warrantless entries and seizures, as described above

and as illustrated in the Elswick video, as also describe and alleged in Count Three below, for a Monell Claim.

44.     There existed no reasonable suspicion, nor probable cause to support the seizure of the Plaintiff as occurred and as is described above. Plaintiff was not suspected of having engaged in any illegal activity.

45.     The defendant officers seized the Plaintiff from inside the home of his friend, without a warrant, and without probable cause that Plaintiff had committed any criminal offense.

46.     At the time of Plaintiff's seizure, the facts and circumstances within the defendants' joint knowledge, as well as those available to the defendants individually, were not sufficient to warrant a reasonably prudent person to believe in the circumstances shown that Plaintiff had violated any criminal statute or offense.

47.     The defendants' actions as alleged herein were performed under color of law, objectively unreasonable, willful, wanton, intentional and done with a callous and reckless disregard for the plaintiffs' Fourth Amendment rights to be free from unreasonable search and seizure.

48.     Plaintiff suffered damages and is entitled to recover for the same.

### COUNT TWO -  USE OF EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AMENDMENT UNDER 42 U.S.C. 1983

49.     Plaintiff incorporates by reference all of the previous paragraphs.

50.     Defendants Davis, Hall and Rahmati used excessive force against the Plaintiff as described above when they violently grabbed him inside the home of Plaintiff's friend, threw him outside and slammed him into a wall. Additionally, Defendant Davis used excessive force when he thereafter used an unnecessary amount of force

twisting Plaintiff's arm unnecessarily when handcuffing the Plaintiff, immediately after slamming him into the wall.

51. At the time this violent physical force was performed by the said defendants, no objectively reasonable police officer could have perceived the Plaintiff as posing an immediate threat to the safety of any person. Plaintiff was unarmed, compliant, with his hands up and visible at the time the violent force was inflicted.

52. At the time Plaintiff was attacked by the officers, Plaintiff was not suspected of having committed any crime. Nor was Plaintiff resisting in any way. Plaintiff was entirely cooperative.

53. At the time Plaintiff was attacked by the officers, he was inside his friend's house, which the defendant officers had no legal right to enter.

54. Defendants Davis, Hall and Rahmati's actions were objectively unreasonable, unlawful, unwarranted, and taken in violation of the Plaintiff's clearly established procedural and substantive rights, including the Fourth Amendment of the U.S. Constitution to be free from having an excessive amount of physical force used against him; namely being violently grabbed and thrown against a wall unnecessarily and having his arm unnecessarily twisted in a painful manner.

55. Defendants Davis, Hall and Rahmati's actions were willful, wanton, intentional, malicious, and done with a callous and reckless disregard for the Plaintiff's Fourth Amendment rights to be free from excessive force.

56. Plaintiff suffered harm, including personal injury, extreme emotional distress, severe pain, and is entitled to recover damages for the same.

## COUNT THREE - MONELL CLAIM

57. Plaintiff incorporates by reference all of the previous paragraphs.

58. The PCC, through the establishment and operation of the Special Enforcement Unit, or SEU, adopted and implemented an official policy, custom and practice of violating the rights of homeowners in Putnam County, West Virginia. The SEU engaged and a pattern and practice of warrantless searches and seizures under the auspices of fighting against illegal drug use and crime. They wore no law enforcement uniforms and generally gave the appearance that they were acting outside of the law, with no documentation, no warrants, and no paperwork in most cases. They used intimidation and a perceived lawlessness to more effectively and efficiently acquire information and sources. However, they were acting under color of law and with the approval of their supervisors and the PCC.

59. Defendants Hall, Rahmati, Lowther, and Davis, acted in furtherance of that said official policy, custom and practice when they deprived the Plaintiff of his Fourth Amendment rights on or about early-August of 2019, as described herein. They made a warrantless entry into the Plaintiff's friend's home and seized him, inflicted violent force upon him, leaving him handcuffed for approximately an hour and a half, ultimately leaving no paper trail of their civil rights violations against Plaintiff.

60. The said defendants have also committed other similar civil rights violations against other victims in Putnam County, West Virginia, including the incident captured on video inside the home of Dustin Elswick in August of 2019.

61. As a direct and proximate result of the said policy, custom and practice, the plaintiffs were damaged, for which they are entitled to recover.

## **COUNT THREE - SUPERVISORY LIABILITY**

62. Plaintiff incorporates by reference all of the previous paragraphs.

63. Supervisor of the defendant police officers - the SEU - had actual knowledge that his subordinates were engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to the plaintiffs; namely that they were going to be searching the plaintiffs' residence and seizing the plaintiffs, and potentially their property without a search warrant, or applicable exception to obtaining a search warrant, as described in the above paragraphs in detail.

64. The said supervisors' response to that knowledge was so inadequate as to show deliberate indifference to, or tacit authorization of, the aforesaid conduct.

65. As a direct and proximate result of the said supervisors' inaction, the plaintiffs suffered constitutional violations and were damaged, for which they are entitled to recover.

## **PRAYER**

WHEREFORE, based on the above stated facts, the plaintiffs respectfully requests that this Honorable Court award:

1. Damages against the defendants in an amount to be determined at trial which will fairly and reasonably compensate the plaintiffs for all compensatory damages to be proven at trial;

2. Punitive damages against the individual defendants in an amount to be determined at trial; and

3. Reasonable attorney fees and costs pursuant to 42 U.S.C. 1988.

**PLAINTIFF DEMANDS A TRIAL BY JURY**

                              MASON DILLON,
                              By Counsel

/s John H. Bryan
John H. Bryan (WV Bar No. 10259)
JOHN H. BRYAN, ATTORNEY AT LAW
411 Main Street
P.O. Box 366
Union, WV 24983
(304) 772-4999
Fax: (304) 772-4998
jhb@johnbryanlaw.com