IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

MASON DILLON, individually,

        Plaintiff,

v.                                                CIVIL ACTION NO.  3:21-0435

BRIAN D. HALL, individually,
XERXES RAHMATI, individually,
SCOTT LOWTHER, individually,
KENNY DAVIS, individually,
PUTNAM COUNTY COMMISSION,
a political subdivision of the State of West Virginia,
JOHN DOE, an individual,

        Defendants.

## AMENDED MEMORANDUM OPINION AND ORDER

The Court amends its previously filed Memorandum Opinion and Order (ECF No. 25) to correctly list the named defendants in the factual background portion of the Order.

Pending before the Court is Defendant Putnam County Commission's ("PCC") Motion to Dismiss. ECF No. 13. For the reasons stated herein, the Court **DENIES** the Motion.

## I. FACTUAL BACKGROUND

The named Defendants, Officers Brian D. Hall, Xerxes Rahmati, Scott A. Lowther, and Kenny Davis (collectively "officers") allegedly entered Plaintiff Dillon Hall's friend's home without a warrant while Plaintiff was present and began an unlawful search of the residence. *See e.g.*, Compl., ECF No. 1. The Complaint alleges that defendant police officers were part of the Putnam County Sherriff's Office's Special Enforcement Unit ("SEU"). *Id.* ¶ 12. The SEU would

obtain tips about individuals who may have been in possession of marijuana or may have been selling marijuana. *Id.* ¶ 14. The SEU would then make warrantless entry into the residence of the suspected individual, and, upon finding the marijuana that was the subject of the tip, threaten and pressure the suspect to give them another tip, in exchange for not being arrested or charged. *Id.* The SEU members would then leave, taking the marijuana they seized, along with any cash or firearms found during the illegal search and seizure. *Id*. Allegedly, the SEU committed similar behavior on many occasions. *Id*. The officers would not leave any "paper trail" such as police reports, warrant applications, charging documents, or search and seizure inventories. *Id.* They would take into their personal possession any seized marijuana, cash, and firearms, without properly documenting their acquisition. *Id.*

In August 2019, the SEU visited the home of Plaintiff's friend, C.R., in Putnam County, West Virginia. *Id*. ¶ 15. Plaintiff, an invited guest, was waiting in C.R.'s home when Defendants knocked and demanded to come in. *Id*. ¶¶ 16-19. As Plaintiff watched from inside the home, C.R. answered the door and refused to allow officers to enter without a warrant. *Id*. ¶ 19. Officers ignored this and forcibly entered C.R.'s home without a warrant and without consent. *Id*. ¶ 20. Plaintiff was fearful of the officers, so he put his hands in the air and asked what was happening. *Id*. ¶¶ 21-22. While his hands were still raised, Defendant Davis drew a firearm and pointed it at Plaintiff. *Id*. ¶ 23. Defendants Davis, Hall, and Rahmati also grabbed Plaintiff and forcibly threw him out of the front door and into a wall, causing his face to hit the wall. *Id*. ¶ 24. They then handcuffed Plaintiff, using an unnecessary amount of physical force for the sole reason of causing pain. *Id.* Plaintiff was not resisting and complied with all orders directed at him. *Id.*

Plaintiff was then handcuffed and placed outside the home for approximately an hour and a half while officers searched C.R.'s residence. *Id*. ¶¶ 25-28. The officers found a small amount

of marijuana and a few hundred dollars, which they confiscated. *Id*. ¶ 27. Plaintiff was released without being arrested, but prior to leaving, the officers circulated Plaintiff's identification and photographed it on their cell phones, threatening Plaintiff that they could cause him harm in the future. *Id*. ¶ 29. The officers left the residence without providing any paperwork to either Plaintiff or C.R. *Id*. ¶ 30. Neither Plaintiff nor his friend were charged with any criminal violation. *Id*. ¶ 31. When Plaintiff later served a Freedom of Information ("FOIA") request upon Putnam County Sheriff's Department to request documentation about this event, the FOIA response indicated no such documentation existed. *Id*. ¶ 32.

A few months later, on January 15, 2020, a YouTube video was uploaded showing several plainclothes police officers, including defendants, unlawfully entering Dustin Elswick's residence. *Id*. ¶ 8. The officers cut the wires to an outside surveillance camera prior to illegally entering and searching the residence, but hidden interior cameras captured the events. *Id*. The officers illegally entered without a warrant by removing an air conditioner from a window and climbing through the window into the home. *Id*. ¶ 9. They then illegally searched the home, presumably for drugs. *Id*. They did not find any drugs or illegal items inside the home. *Id*. ¶ 10. They did, however, remove Elswick's firearms from their storage and photograph them. *Id*. They also found cremated ashes of Elswick's friend and (presumably believing them to be drugs), submitted them to a field drug test kit. *Id*. After testing negative, the kit, containing human bone fragments, was thrown on the floor of the residence and left there. *Id*. The officers left the house ransacked, with the firearms removed from their cases. *Id*. ¶ 11. Had they found any drugs, they would have seized them along with firearms and other items in the home. *Id*.

The video went viral, causing Plaintiff and other victims of the SEU to come forward and pursue this case. *Id*. ¶ 13. Plaintiff filed this action, alleging one count of unreasonable search

and seizure against the individual defendant officers; an excessive force claim under 42 U.S.C. § 1983 against Defendants Davis, Hall, and Rahmati; a *Monell* claim against the Putnam County Commission ("PCC"); and a count against John Doe as supervisor of the SEU. PCC has moved to dismiss the Complaint against it.

## II. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff's complaint must contain "a short and plain statement of the claim showing [the plaintiff] is entitled to relief." Fed. R. Civ. P. 8(a)(2). The facts contained in the statement need not be probable, but the statement must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). In considering the plausibility of a plaintiff's claim, the Court must accept all factual allegations in the complaint as true. *Id.* Still, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Whether a plausible claim is stated in a complaint requires a court to conduct a context-specific analysis, drawing upon the court's own judicial experience and common sense. *Id.* at 679. If the court finds from its analysis that "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Id.* (quoting, in part, Fed. R. Civ. P. 8(a)(2)). Nonetheless, a plaintiff need not show that success is probable to withstand a motion to dismiss. *Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and

unlikely.").

### III. ANALYSIS

As an initial matter, it is well established that a state's political subdivisions are amenable to suit under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1976). Yet the fact that political subdivisions are suitable defendants does not render them vicariously liable for the actions of their employees. *Id.* at 694. Rather, a plaintiff must "adequately plead and prove the existence of an official policy or custom that is fairly attributable to the municipality and that proximately caused the deprivation of their rights." *Semple v. City of Moundsville*, 195 F.3d 708, 712 (4th Cir. 1999). The Fourth Circuit Court of Appeals has clarified that:

> [a] policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle,* 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). The Fourth Circuit has noted that "[a]lthough prevailing on the merits of a *Monell* claim is difficult, simply alleging such a claim is, by definition, easier." *Owens v. Baltimore Attorney's Office*, 767 F.3d 379, 403 (4th Cir. 2014). In this context, "[t]he recitation of facts need not be particularly detailed, and the chance of success need not be particularly high." *Id.*

Defendant PCC maintains that Plaintiff has failed to present a policy and/or practice and custom theory and alleges nothing more than a respondeat superior claim. Def.'s Mem. in Support at 13, ECF No. 14. Plaintiff has "fail[ed] to identify any such express policy." Def.'s Mem. at 7. Defendant also notes that Plaintiff alleges only one other similar incident involving

SEU officers, which occurred around the same time as the events herein, and so county officials had no knowledge of earlier instances involving similar violative conduct. *Id*. at 12. PCC contends that the isolated instances would not reach the "widespread and permanent" practice necessary to establish liability. *Id*. at 11-12. Plaintiff responds that liability can stem from a single incident, because requirements of policy and custom do not necessitate proof of a long-standing practice. Pl.'s Resp. at 5, ECF No. 18. He contends that PCC can be liable because, in having an SEU force to engage in drug investigations through warrantless searches and seizures, "PCC authorized a police[] practice and pattern of unconstitutional conduct in violation of the Fourth Amendment," which is further evidenced by the videotaped incident. *Id.* at 8.

Plaintiff's allegations plausibly state a claim for relief. In *Owens*, the Fourth Circuit allowed a claim to survive a motion to dismiss when Plaintiff alleged that "'reported and unreported cases from the period of time before and during the events complained of' establish that the BCPD [Baltimore City Police Department] had a custom, policy or practice of knowingly and repeatedly suppressing exculpatory evidence." *Owens*, 767 F.3d at 403. Further, the plaintiff alleged that "'a number of motions were filed and granted during this time period that demonstrate. . . the custom, policy, or practice. . . by condoning it and/or knowingly turning a blind eye to it.'" *Id*. The Court found that the assertions as to "reported and unreported cases" and "numerous successful motions" were factual allegations, the veracity of which could plausibly support a *Monell* claim, and which would buttress plaintiff's legal conclusions. The *Owens* court also relied on a First Circuit decision concluding that allegations of a "'volume of cases'" involving similar constitutional violations to those alleged by the plaintiff contained sufficient factual matter to support a *Monell* claim, even if "the complaint was couched in general terms" and the "cases" comprising the "volume" were not otherwise identified. *Id*. at

403-04 (brackets omitted) (quoting *Haley v. City of Bos.*, 657 F.3d 39, 53 (1st Cir. 2011)).

Plaintiff alleges that "[t]he SEU engaged in a pattern and practice of warrantless searches and seizures…." and that the SEU "ha[s] also committed other similar civil rights violations against other victims in Putnam County, including the incident captured on video… in August of 2019." Compl. ¶¶ 58, 60. This allegation, like the one in *Owens*, alleges separate instances that may buttress Plaintiff's legal conclusion, even if they occurred after this specific incident. *See also Daniels v. City of South Charleston*, No. 2:20-cv-00779, 2021 WL 3624696, at *5 (S.D.W. Va. Aug. 16, 2021) (finding that the court was constrained by *Owens* to conclude that the plaintiff's complaint stated sufficient factual detail to support his allegations when he claimed that unconstitutional excessive force "has been employed against multiple West Virginia citizens on multiple occasions within the past five years.") (internal citations omitted); *Lane v. Fayette Cnty. Comm'n*, No. 2:18-CV-01223, 2019 WL 4780815, at *3 (S.D.W. Va. Sept. 30, 2019) (granting a motion to dismiss where plaintiff did not allege "any instances of such misconduct other than the instant case."); *Quigley v. City of Huntington*, No. 3:17-CV-01906, 2017 WL 9533233, at *9 (S.D.W. Va. Sept. 22, 2017) (finding sufficient allegations to withstand a motion to dismiss where "[p]laintiff's identification of a municipal custom and citation to seven prior civil rights lawsuits filed against the Huntington Police Department suggested the City's knowledge and indifference.") *report and recommendation adopted sub nom by* 2017 WL 4998647 (S.D.W. Va. Nov. 2, 2017).

The Complaint's other allegations include that PCC purposely established and operated the SEU and knew of and condoned the SEU officers repeated constitutional violations. *Id*. ¶ 51. This sufficiently alleges that the PCC was the "moving force" behind the constitutional violations where it deliberately created a unit of officers who did not comply with procedural

safeguards and engaged in constitutional violations. *See Bd. of Ctny. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 404 (quoting *Monell*, 436 U.S. at 694).

## IV. CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss (ECF No. 13) is **DENIED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: December 10, 2021

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE